1  +

2

3

4

5

6

7

8              **UNITED STATES DISTRICT COURT**

9                 EASTERN DISTRICT OF CALIFORNIA

10

11  LARRY MACREEN ROMERO,              Case No.  1:14-cv-01105-SAB

12              Plaintiff,            ORDER DENYING PLAINTIFF'S SOCIAL
                                      SECURITY APPEAL
13        v.
                                      (ECF Nos. 17, 18)
14  COMMISSIONER OF SOCIAL SECURITY,

15              Defendant.

16

17                        **I.**

18                  **INTRODUCTION**

19        Plaintiff Larry Macreen Romero ("Plaintiff") seeks judicial review of a final decision of

20  the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application

21  for disability benefits pursuant to the Social Security Act.  The matter is currently before the

22  Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge

23  Stanley A. Boone.[1]

24        Plaintiff suffers from psoriasis, psoriatic arthritis, degenerative disc disease, obesity, and

25  depression.  For the reasons set forth below, Plaintiff's Social Security appeal shall be denied.

26  / / /

27  / / /

28  ---
[1] The parties have consented to the jurisdiction of the United States Magistrate Judge.  (See ECF Nos. 9, 24.)

## II.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff protectively filed an application for a period of disability and disability insurance benefits on September 27, 2010.  (AR 62.)  Plaintiff's applications were initially denied on February 4, 2011, and denied upon reconsideration on October 4, 2011.  (AR 73-76, 79-83.) Plaintiff requested and received a hearing before Administrative Law Judge Cynthia D. Rosa ("the ALJ").  Plaintiff appeared for a hearing on September 24, 2012.  (AR 31-53.)  On October 3, 2012, the ALJ found that Plaintiff was not disabled.  (AR 12-27.)  The Appeals Council denied Plaintiff's request for review on May 1, 2014.  (AR 8-10.)

**A.     Hearing Testimony**

Plaintiff testified at a hearing on September 24, 2012, and was represented by counsel. (AR 33-47.)  Plaintiff was born on March 30, 1964, and was 47 years old on the date of the hearing.  (AR 34.)  Plaintiff is 5 foot 7 inches tall and weighs 210 pounds.  (AR 37.)  Plaintiff graduated from high school and has approximately 80 units of college.  (AR 37.)  Plaintiff lives with his wife, 16 year old daughter, and sister-in-law.  (AR 38.)

Plaintiff worked as a tax examiner and then as a supervisor for the Internal Revenue Service.  (AR 37.)  Plaintiff stopped working after he became sick with MRSA and was hospitalized.  (AR 42.)  His liver was failing from the psoriasis and the medication that he was taking.  (AR 42.)  Plaintiff still has the MRSA virus in his body, but it is not symptomatic.  (AR 42.)

Plaintiff has a driver's license, but very rarely drives.  (AR 38.)  Plaintiff will take his daughter to school is she needs a ride, but hardly ever drives.  (AR 38.)  Plaintiff drives six to seven times a week.  (AR 38-39.)

Plaintiff receives his medical treatment from Kaiser Permanente.  (AR 39.)  Plaintiff is treated by Dr. Kawagoe for psychiatric issues; Dr. Fung, a rheumatologist; and a nurse practitioner Margo Cegielski for dermatologic issues.  (AR 39.)  Plaintiff takes medication for depression and psoriatic arthritis and psoriasis that help but he does not feel good.  (AR 39.)  The medication causes Plaintiff to have difficulty focusing and concentrating.  (AR 41.)  He has

1   problems trying to articulate; what words he wants to use, pronunciation and, conversation.  (AR
2   41.)  Plaintiff becomes angry for no reason.  (AR 42.)  Plaintiff has difficulty refraining from
3   becoming excited about things.  (AR 42.)  Plaintiff gets upset about little, silly things and
4   argumentative with other people.  (AR 42.)  Plaintiff believes these are side effects of his
5   medication.  (AR 42.)

6        Plaintiff had some skin outbreaks on both his forearms at the hearing.  (AR 40.)  Plaintiff
7   testified that it was 100 percent better than it had been.  (AR 41.)  Several years ago he had an
8   outbreak that was a fiery red color over 70 percent of his body.  (AR 41.)  Plaintiff testified that
9   the psoriasis still covers 70 percent of his body.  (AR 41.)

10       Plaintiff is unable to work because he cannot stay focused, and cannot sit or stand for
11   long periods of time.  (AR 43.)  Plaintiff mostly lies down at home due to excruciating pain and
12   is on "like pain killers" for lower back pain.  (AR 43.)  Plaintiff does not have a regular sleep
13   pattern.  (AR 43.)  He goes to sleep between 2:00 or 3:00 in the morning.  (AR 43.)  He gets up
14   to see his daughter off to school, and picks up around the house if he can.  (AR 43.)  Plaintiff is
15   unable to do any chores around the house due to back pain.  (AR 43.)  Plaintiff spends 80 percent
16   of his day lying down.  (AR 44.)

17       Plaintiff does not leave the house.  (AR 44.)  He watches church on television.  (AR 44.)
18   Plaintiff is trying to walk to get some exercise.  (AR 44.)  The rheumatologist recommended he
19   walk for fifteen minutes per day.  (AR 44.)  Plaintiff can walk 400 meters without taking a break
20   or about 10 minutes.  (AR 45.)  Plaintiff can stand for ten to fifteen minutes.  (AR 45.)  Plaintiff
21   would be able to stand or sit one hour each in an eight hour day.  (AR 45.)  When Plaintiff sits he
22   feels a sharp throbbing pain in his lower back.  (AR 45-46.)  Plaintiff can only maintain attention
23   for ten to fifteen minutes and is not able to watch a movie because he cannot follow what is
24   happening.  (AR 46.)

25       Plaintiff has not drunk any alcohol since he became sick in September 2010, but prior to
26   that he was a social drinker who never over indulged.  (AR 46.)  Plaintiff lacks confidence
27   because of the psoriasis.  (AR 47.)  It is all over his body and he wears long sleeves.  (AR 47.)  It
28   itches and he scratches sometimes causing it to bleed.  (AR 47.)  Plaintiff has stiffness from

1  psoriatic arthritis.  (AR 47.)  Plaintiff has stiffness in his lower back and thinks that it is starting

2  in his wrists and elbows because when he sits holding his chin up and he moves he feels like he

3  locked up.  (AR 47-48.)

4         A vocational expert ("VE"), Judith Najarian, also testified at the hearing.  (AR 48-52.)

5  The VE classified Plaintiff's prior work as examiner, Government service, DOT 169.267-014,

6  sedentary, SVP: 6, skilled; and supervisor, Government service, DOT 188.137-010, light, SVP:

7  7, skilled, but performing as medium.  (AR 50.)

8         The ALJ proffered a hypothetical of an individual of Plaintiff's age, education, and work

9  experience who is able to perform light work.  (AR 50.)  This individual is able to occasionally

10  climb ramps and stairs; can never climb ropes, ladders, or scaffolds; can occasionally stoop and

11  crawl; should avoid environmental extremes of hot and cold, fumes, odors, and gases.  (AR 50.)

12  Additionally, the individual should avoid heights and working machinery and can perform

13  simple, repetitive tasks in a predictable environment.  (AR 50-51.)  The VE opined that this

14  individual could not perform Plaintiff's past work.  (AR 51.)  But the individual could work as

15  an officer helper, DOT 239.567-010, light, SVP: 2, occasional stooping, with 15,363 jobs in

16  California and 117,183 nationally; order caller, DOT 209.667-014, light, SVP: 2, all postural

17  below occasional, with 26,260 jobs in California and 199,904 nationally; and a mail clerk or mail

18  sorter, DOT 209.687-026, light, SVP: 2, with 6,640 jobs in California and 71,760 nationally.

19  (AR 51.)

20        Plaintiff's attorney proffered a hypothetical of an individual of Plaintiff's age, education

21  and vocational profile who is able to lift and carry less than ten pounds; can stand and walk less

22  than two hours in an eight-hour workday; can do no climbing, balancing, stooping, kneeling, or

23  crouching; can occasionally crawl, reach, handle, or finger; no exposure to heights, moving

24  machinery, temperature extremes, chemicals, or dust; and would likely be absent from work an

25  average of four or more days per month due to impairments or treatment.  (AR 52.)  The VE

26  opined that there would be no work for this individual.  (AR 52.)

27        **B.    ALJ Findings**

28        The ALJ made the following findings of fact and conclusions of law:

- Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2014.
- Plaintiff has not engaged in any substantial gainful activity since the alleged onset date of September 7, 2010.
- Plaintiff has the following severe impairments: Psoriatic Arthritis, Degenerative Disc Disease of the Lumbar Spine, Psoriasis, Obesity, and Depression.
- Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of one of the listed impairments.
- Plaintiff has the residual functional capacity to perform light work.  Plaintiff can lift or carry twenty pounds occasionally and ten pounds frequently; can sit for six hours in an eight-hour workday and stand or walk for six hours in an eight-hour workday; can occasionally climb ramps or stairs; can never climb ropes, ladders, or scaffolds; can occasionally stoop and crawl; should avoid environments with extreme hot and cold, fumes, odors, dust, or gasses; should avoid hazards such as heights and moving machinery; and can perform simple routine repetitive tasks in a predictable environment.
- Plaintiff is unable to perform any past relevant work.
- Plaintiff was born on March 30, 1964 and was 46 years old, which is defined as a younger individual, on the alleged disability onset date.
- Plaintiff has at least a high school education and is able to communicate in English.
- Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.
- Plaintiff has not been under a disability, as defined in the Social Security Act, from September 7, 2010 through the date of decision.

(AR 17-27.)

/ / /

1       **C.      Relevant Medical Record**

2       An October 23, 2006 lumbrosacral spine x-ray showed rather marked narrowing of the

3   L5-S1 disc space with early degenerative changes.  (AR 294.)  A November 26, 2006 MRI of

4   Plaintiff's lumbar spine showed left-sided disc herniation at L4-5 encroaching on the left lateral

5   recess and presumably involving the left L5 nerve root within the thecal sac.  (AR 293.)  There

6   was a left-sided facet hypertrophy at L5-S1 encroaching on the inferior aspect of the left neural

7   foramen, but the left L5 nerve root was not significantly compromised within the foramen itself.

8   (AR 293.)

9       A January 28, 2009 x-ray of Plaintiff's lumbar spine showed narrowing at L5-SI with

10  discogenic change.  (AR 290.)  Plaintiff had an x-ray of his lumber spine on September 17, 2009,

11  which showed a narrowing of the disc space at L5-SI with marginal osteophyte formation which

12  is suggestive of degenerative changes.  (AR 289.)  There was mild syndesmophyte formation

13  seen at L2-3 and L3-4.  These findings were non-specific but can be seen in psoriatic spondylitis.

14  (AR 289.)  Flexion and extension views showed no signs of segmental instability.  (AR 289.)

15  The iliosacral joint bilaterally were irregular with small erosions and signs of sclerosis which can

16  be seen in inflammatory arthropaties such as psoriasis.  (AR 289.)

17      Plaintiff had been hospitalized with "MRSA high grade bacteremia, septic emboli of

18  lungs, large thrombus in renal vein and IVC" and was discharged on September 27, 2010.  (AR

19  305.)  Plaintiff saw Dr. Lin on October 8, 2010.  (AR 304-306.)  Although Plaintiff reported that

20  he was feeling fine, Dr. Lin was concerned that Plaintiff was reporting that he was more tired

21  and his kidney function was stable, but had not improved on the medication.  (AR 304.)  Dr. Lin

22  noted a generally normal examination; Plaintiff's MRSA had resolved; and his psoriasis was

23  stable.  (AR 305-306.)  Plaintiff was readmitted to the hospital due to concerns regarding kidney

24  function.    (AR 305, 311, 313.)    A renal ultrasound on this date noted an unremarkable

25  examination.    (AR 274-75.)    Plaintiff was discharged on October 11, 2010 after an

26  uncomplicated hospital stay.  (AR 347-348, 349.)

27      Plaintiff was seen by Dr. Rodriguez on October 14, 2010.  (AR 357-358.)  Dr. Rodriguez

28  found that Plaintiff's renal function was still compromised, but noted an essentially normal

examination and no skin rashes or suspicious lesions.  (AR 357-358.)  Plaintiff's psoriasis was stable.  (AR 358.)  On October 18, 2010, Plaintiff was seen by Dr. Lin who noted that Plaintiff reported he was "feeling good."  (AR 360.)  Plaintiff reported swinging a baseball bat and that his skin lesions may be coming back.  (AR 360.)  Plaintiff's physical examination was normal. (AR 360.)  Dr. Lin saw Plaintiff again on October 29, 2010, and complained of increasing low back pain.  (AR 366.)  Plaintiff's physical examination was again normal.  (AR 366.)

Plaintiff had an MRI of the lumbar spine on November 5, 2010.  (ECF No. 270-271.) The MRI revealed interval resolution of the previously seen L4-5 disc protusion.  Residual mild posterior disc bulge and posterior central annular fissure were noted.  (AR 271.)  Findings were noted typical for reactive changes secondary to the degenerative disc disease, early discitis was not certainly excluded.  (AR 271.)

Plaintiff was seen by Dr. Rodriguez on November 9, 2010 complaining of low back pain on and off for the last four years with no radiation of pain or leg symptoms.  (AR 375.)  Dr. Rodriguez noted mild back pain with no masses or erythema and normal coloration and turgor of the skin with no rashes or suspicious skin lesions.  (AR 376.)

Plaintiff was seen on November 26, 2010 by Dr. Lin reporting that he was feeling fine, with mild back pain and slight tiredness when mowing the lawn.  (AR 396.)  Plaintiff's examination was normal with the notation "mild subjective tenderness?"  (AR 397.)  Dr. Lin stated that he did not believe Plaintiff had a need to restart his psoriasis medication as there was no active infection.  (AR 397.)

On December 6, 2010, Plaintiff saw Nurse Practitioner (N.P.) Margot Cegielski complaining of pain in his back.  (AR 400.)  The record notes that Plaintiff had a normal examination with psoriasis on the forearms and elbows, minimal on lower legs and just beginning to get some rough skin on the abdomen.  (AR 401.)  After discussion with Dr. Hoffman, the recommendation was not to place Plaintiff back on his medication, but to have him use topicals and stay on a low glycemic index diet.  (AR 401.)

On January 7, 2011, Plaintiff was seen by Dr. Lin who noted that psoriasis skin lesions have come back.  (AR 433.)  Plaintiff's physical examination was normal.  (AR 433.)  On

January 11, 2011, Plaintiff was seen by N.P. Cegielski who noted psoriasis on the arms to knuckles, legs, thighs to ankles, truck (anterior and posterior), buttocks and light red color on face.  (AR 437.)  Plaques were thin now and red with a flaking scale, but are enlarging and getting thicker since the last visit.  (AR 437.)  Plaintiff was to start customary initial treatment at half the normal dose and evaluate response.  (AR 437.)

On February 2, 2011, an agency physician, Dr. J. Bonner performed a case analysis and determined that Plaintiff's psoriasis was under good control.  (AR 57.)  A November 9, 2010 MRI shows spondylosis that could be the source of mechanical lower back pain.  (AR 57.)  Plaintiff's lower back pain will limit him to light residual functional capacity with postural limitations.  (AR 57.)  Plaintiff has a history of recent MRSA which has resolved.  (AR 57.)  Plaintiff has hypertension by there is no indication of end organ compromise and it is not limiting.  (AR 57.)  Plaintiff has recent evidence of renal vein thrombosis with clot in the inferior vena cava with no evidence of obstruction and will be on Coumadin for a year so will need to limit heights and sharp equipment.  (AR 57.)  Plaintiff's renal function appears significantly improved and is not limiting.  (AR 57.)  Dr. Bonner found that Plaintiff was able to lift 20 pounds occasionally and 10 pounds frequently; could stand and or walk for 6 hours in an 8-hour workday; could climb ramps or stairs frequently; never climb ladders, ropes or scaffolds; and could occasionally stoop or crawl.  (AR 58-59.)  Plaintiff must avoid exposure to extreme heat and cold, concentrated exposure to fumes, odors, dusts, gases, and poor ventilation and avoid all expose to hazards.  (AR 59-60.)

On March 1, 2011, Plaintiff was seen by Dr. Kem for knee pain due to an injury the week prior.  (AR 441.)  Plaintiff's physical examination was normal other than tenderness in his right knee.  (AR 442.)  On March 4, 2011, Plaintiff saw Dr. Lin who and reported that aggressive psoriatic skin lesions and joint pain are returning.  (AR 444.)  Dr. Lin noted Plaintiff had an aggressive looking rash on his whole body and requested to restart his psoriasis medication.  (AR 444-445.)  Plaintiff saw Dr. Lin on March 17, 2011, and stated he was doing well.  (AR 448.)  Dr. Lin again noted the aggressive looking rash on his whole body.  (AR 448.)

Plaintiff saw N.P. Cegielski on March 21, 2011 who noted a complicated case of

1   psoriasis as he had severe sepsis while on Enbrel and was hospitalized for nearly one month in

2   July 2010.  (AR 450.)  Plaintiff reported difficulty sleeping, severe esteem issues, and severe

3   itching.  (AR 450.)  N.P. Cegielski noted Plaintiff's trunk, face and extremities are covered with

4   red plaques and his lower legs were excoriated from scratching.  (AR 451.)

5         An MRI of Plaintiff's lumbar spine was performed on March 28, 2011.  (AR 458-59.)

6   The MRI showed degenerative disc changes similar to the prior study and the previously noted

7   abnormal enhancement at L4-5 and L5 disc had nearly totally resolved.  (AR 459.)  There was no

8   evidence of discitis.  (AR 459.)  Plaintiff was seen by Dr. Hoffman on March 29, 2011 reporting

9   that he was feeling comfortable with much less itching.  (AR 453.)  Plaintiff reported increased

10  irritability with family, less self-confidence and feelings of depression with sleep disturbance.

11  (AR 453.)  Dr. Hoffman noted scaly papules on face and plaques with slight scaling on arms.

12  (AR 453.)  She did not examine the rest of his body.  (AR 453.)

13        On March 31, 2011, Plaintiff was seen by Dr. Fung for psoriatic arthritis.  (AR 455.)  Dr.

14  Fung notes that Plaintiff was last seen in September 2009 and after his medication was switched

15  he developed the MRSA infection.  (AR 456.)  Plaintiff's back was better on the medication, but

16  he was off his medication after developing the infection and his back is starting to hurt again

17  with some nighttime awakenings.  (AR 456.)  Dr. Fung noted that Plaintiff's neck was supple,

18  with painful slow movement; diffuse tenderness especially in the lumbar spine and SI joints;

19  mild diffuse tenderness in hands, and diffuse plaque psoriasis.  (AR 456.)  Dr. Fung found

20  psoriatic arthritis with both joints and skin active and notes that they will treat aggressively with

21  immunosuppressants.  (AR 456.)

22        On August 1, 2011, an agency physician, Dr. R. Betcher, prepared a case analysis for

23  Plaintiff.  (AR 481-483.)  Dr. Betcher noted that records indicate that Plaintiff is making a

24  satisfactory recovery from his MRSA infection and is responding well to treatment and

25  medication.  (AR 482.) Dr. Betcher found that there had been no change in Plaintiff's condition

26  and the initial light residual functional capacity assessment was adopted.  (AR 483.)  Dr. Betcher

27  also considered Plaintiff's new allegations of depression and gave great weight to the opinion of

28  the consultative examiner that Plaintiff was not significantly limited mentally.  (AR 483-484.)

1    Plaintiff was seen by Dr. Hoffman on August 18, 2011.  (AR 571-572.)  He was doing

2    well on his medication although still complaining of significant arthritic back pain.  (AR 571.)

3    Plaintiff reported some depression, but it is improving.  (AR 571.)  Plaintiff had slightly scaly

4    papules/plaques on his lower legs.  (AR 571.)  His scalp, face, and trunk were clear.  (AR 572.)

5    Plaintiff saw Dr. Fung on October 24, 2011 stating that his medication has helped his

6    psoriasis, but not so much his lower back pain.  (AR 553-554.)  Plaintiff complained that his

7    back hurts when he is sitting up or standing and it is difficult for him to sleep.  (AR 553.)  Dr.

8    Fung found mild SI joint tenderness and moderate lower lumbar spine tenderness.  (AR 553.)

9    Plaintiff moves antalgically when changing positions or walking.  (AR 553.)  Plaintiff's psoriasis

10   had the same distribution as before, but was not as red and scaly.  (AR 553.)  Plaintiff had a

11   slightly depressed mood.  (AR 553.)  Plaintiff's medication was changed to an injectable.  (AR

12   554.)  The record notes that Plaintiff's March 2011 lumbar spine x-ray showed no change from

13   November 2010.  (AR 553.)

14   Dr. Fung saw Plaintiff on December 20, 2011.  (AR 539-540.)  Plaintiff had been

15   changed to a new medication that helped to reduce some of his back pain and also his psoriasis.

16   (AR 539.)  Plaintiff stated that the new medication was "a miracle."  (AR 539.)  Plaintiff had SI

17   joint tenderness in his back and moderate lower lumbar spine tenderness.  (AR 539.)  Plaintiff

18   moves stiffly when changing positions and walking, but had no active synovitis.[2]  (AR 539.)

19   Plaintiff's psoriasis was much improved with no real active lesions.  (AR 539.)  Plaintiff's mood

20   was noted as slightly depressed.  (AR 539.)  Dr. Fung noted that Plaintiff's psoriatic arthritis was

21   doing better with the new medication.  (AR 540.)

22   Plaintiff was seen by Dr. Fung on March 27, 2012 complaining that his back was hurting

23   more when he tried to move around.  (AR 527.)  He occasionally feels it at night when he turns

24   over and his hands are hurting.  (AR 527.)  The record notes "hands feet swollen ? visibly."  (AR

25   527.)  Plaintiff's psoriasis is still active, mostly on his shins, arms, and abdomen.  (AR 527.)

26   Plaintiff reports that the medication is still helping.  (AR 527.)  Dr. Fung found mild SI joint

27

28   [2] Inflammation of a synovial membrane, especially that of a joint; in general when unqualified, the same as arthritis.
     Stedman's Medical Dictionary 1920 (28th Ed. 2006).

tenderness, moderate lower lumbar spine and paraspinal tenderness with no active synovitis. (AR 527.)  Plaintiff psoriatic arthritis was doing okay, and his back pain was suspected to be from "wear and tear" arthritis and Fibromyalgia. (AR 506, 528.)

On May 7, 2012, Plaintiff attended physical therapy and an eight week plan of treatment was developed for Plaintiff.  (AR 520-521.)   The physical therapist noted flattened lumbar lordosis.  (AR 521.)  Plaintiff lumbar active range of motion was noted as limited by pain: Flexion = 60 percent; Extension = 25 percent; and right and left side bend: 25 percent.  (AR 521.) Plaintiff's hip passive range of motion was within normal limits and hip special tests were negative.  (AR 521.)   Straight leg raise and prone knee bend were negative bilaterally.  (AR 521.)  The physical therapist found tight hamstrings bilateral to 80 degrees and tight quadriceps bilateral 6 inches heel to glut.  (AR 521.)

Plaintiff was seen for a second physical therapy appointment on June 6, 2012, and reported that his pain was the same, but he was more flexible doing the exercises.  (AR 515.) Plaintiff lumbar active range of motion, straight leg raise and prone knee bend were the same as the prior appointment.  (AR 515.)

On September 19, 2012, Dr. Fung completed a medical source statement.  (AR 589-591.) Dr. Fung opined that Plaintiff could lift or carry less than 5 pounds due to lower back and shoulder pain.  (AR 589.)   Plaintiff could stand and walk one hour each in an eight-hour workday.  (AR 589.)  Plaintiff could sit two hours in an eight-hour work day due to his lower back pain.  (AR 590.)  Plaintiff would need to have a thirty minute break every half hour due to chronic back and hip pain.  (AR 590.)  Plaintiff could never climb, balance, stoop, kneel, or crouch.  (AR 590.)  Plaintiff could occasionally crawl, reach, handle, or finger with both hands. (AR 590.)  Dr. Fung stated no more than two hours per day of repetitive hand use as his wrists stiffen up and swell.  (AR 590.)   Plaintiff was restricted from heights, moving machinery, temperature extremes, chemicals, and dust due to chronic arthritis in his upper and lower extremities and rash which would worsen in temperature extremes.  (AR 590.)  Dr. Fung based this on Plaintiff's psoriatic arthritis that was currently requiring therapy with both a biologic agent and an immunosuppressive medication and Plaintiff was still struggling with back pain,

1   shoulder pain, and hand pain that made walking difficult.  (AR 591.)  Plaintiff's shoulder and

2   hand pain limited his upper extremity use.  (AR 591.)  Dr. Fung indicated that the restrictions

3   had been present now and in August 2010.  (AR 591.)  Plaintiff would miss more than four days

4   per month of work as a result of his impairments or treatment.  (AR 591.)

5                                                    **III.**

6                                          **LEGAL STANDARD**

7               Congress has provided that an individual may obtain judicial review of any final decision

8   of the Commissioner of Social Security regarding entitlement to benefits.  42 U.S.C. § 405(g).

9   In reviewing findings of fact in respect to the denial of benefits, this court "reviews the

10  Commissioner's final decision for substantial evidence, and the Commissioner's decision will be

11  disturbed only if it is not supported by substantial evidence or is based on legal error."  Hill v.

12  Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012).   "Substantial evidence" means more than a

13  scintilla, but less than a preponderance.  Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996)

14  (internal quotations and citations omitted).  "Substantial evidence is relevant evidence which,

15  considering the record as a whole, a reasonable person might accept as adequate to support a

16  conclusion."  Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of

17  Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

18              "[A] reviewing court must consider the entire record as a whole and may not affirm

19  simply by isolating a specific quantum of supporting evidence."  Hill, 698 F.3d at 1159 (quoting

20  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006).  However, it is not

21  this Court's function to second guess the ALJ's conclusions and substitute the court's judgment

22  for the ALJ's.  See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is

23  susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be

24  upheld.").

25                                                    **IV.**

26                                 **DISCUSSION AND ANALYSIS**

27              Plaintiff contends that the ALJ committed reversible error by failing to properly consider

28  the medical evidence from his treating and examining physicians and his own testimony.

1    Defendant argues that the ALJ provided an extensive discussion of why she properly rejected Dr.

2    Fung's medical source statement and found Plaintiff's allegations to be not credible.

3        **A.    The ALJ Did Not Err in Not Crediting Plaintiff's Allegations of Disability**

4             Plaintiff argues that the ALJ failed to provide specific and legitimate reasons to reject his

5    testimony.  Determining whether a claimant's testimony regarding subjective pain or symptoms

6    is credible, requires the ALJ to engage in a two-step analysis.  Molina v. Astrue, 674 F.3d 1104,

7    1112 (9th Cir. 2012).  The ALJ must first determine if "the claimant has presented objective

8    medical evidence of an underlying impairment which could reasonably be expected to produce

9    the pain or other symptoms alleged."  Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir.

10   2007) (internal punctuation and citations omitted).  This does not require the claimant to show

11   that her impairment could be expected to cause the severity of the symptoms that are alleged, but

12   only that it reasonably could have caused some degree of symptoms.  Smolen, 80 F.3d at 1282.

13            Second, if the first test is met and there is no evidence of malingering, the ALJ can only

14   reject the claimant's testimony regarding the severity of her symptoms by offering "clear and

15   convincing reasons" for the adverse credibility finding.  Carmickle v. Commissioner of Social

16   Security, 533 F.3d 1155, 1160 (9th Cir. 2008).  The ALJ must specifically make findings that

17   support this conclusion and the findings must be sufficiently specific to allow a reviewing court

18   to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not

19   arbitrarily discredit the claimant's testimony.  Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir.

20   2004) (internal punctuation and citations omitted).

21            Factors that may be considered in assessing a claimant's subjective pain and symptom

22   testimony include the claimant's daily activities; the location, duration, intensity and frequency

23   of the pain or symptoms; factors that cause or aggravate the symptoms; the type, dosage,

24   effectiveness or side effects of any medication; other measures or treatment used for relief;

25   functional restrictions; and other relevant factors.  Lingenfelter, at 1040; Thomas, 278 F.3d at

26   958.  In assessing the claimant's credibility, the ALJ may also consider "(1) ordinary techniques

27   of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements

28   concerning the symptoms, and other testimony by the claimant that appears less than candid;

[and] (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment. . . ." <u>Tommasetti v. Astrue</u>, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting <u>Smolen</u>, 80 F.3d at 1284).

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment as discussed throughout this decision." (AR 21.)  The ALJ found that Plaintiff was less than credible and his allegations could not be relied upon to determine the extent of his limitations (AR 21), and set forth multiple legitimate reasons to support such a finding.

Plaintiff argues that the ALJ erred in finding that Plaintiff's daily activities can somehow be construed as comparable to a 40 hour workweek.  However, the ALJ cited discrepancies in Plaintiff's testimony as casting doubt on his credibility.  (AR 23.)  There are two ways for an ALJ to "use daily activities to form the basis of an adverse credibility determination: if the claimant's activity contradicts his testimony or if the claimant's activity meets the threshold for transferable work skills." <u>Phillips v. Colvin</u>, 61 F. Supp. 3d 925, 944 (N.D. Cal. 2014).  Here, the ALJ considered that Plaintiff's reported activities contradicted his testimony regarding his limitations.

Plaintiff filed out a function report on December 8, 2010 in which he stated that he stiffens up when he rides in a vehicle for over thirty minutes and because of this cannot engage in outings with friends and family, travel, participate in sporting activities, coach, garden or assist with household chores or cleaning.  (AR 20, 165.)  Yet, Plaintiff's daughter plays on a travel softball team and Plaintiff attends her games and coaches verbally from the sidelines.  (AR 162.)  On July 22, 2011, Plaintiff told Dr. Kawagoe that he had gone fishing on two occasions and was planning a trip to Colorado to attend his nephew's baseball tournament.  (AR 22, 575.)  On September 2, 2011, Plaintiff reported to Dr. Lewis that performs chores such as vacuuming and cooking.  (AR 489.)  On April 24, 2012, Plaintiff told Dr. Kawagoe that he was intending to plant a garden and on May 15, 2012, he reported that the garden was doing well and he was

1  enjoying it.  (AR 518.)

2  During the hearing, Plaintiff stated that although he has a driver's license he hardly ever

3  drives.  (AR 38.)  However, after further questioning, Plaintiff admitted that he drives six to

4  seven times a week.  (AR 38-39.)  Additionally, the ALJ cited Plaintiff's attempt to downplay his

5  use of alcohol.  (AR 23.)  At the hearing, Plaintiff testified that he has not drunk alcohol since he

6  became sick in September 2010.  (AR 46.)  Yet on March 1, 2011, Plaintiff reported that he

7  occasionally uses alcohol.  (AR 441.)  During the September 2, 2011 consultative examination,

8  Plaintiff told Dr. Lewis that he continues to consume alcohol.  (AR 486.)  The ALJ properly

9  considered, and there is substantial support in the record, that Plaintiff's inconsistent statements

10 undermined his credibility as to his limitations.  Thomas, 278 F.3d at 959; Light v. Soc. Sec.

11 Admin., 119 F.3d 789, 792 (9th Cir.1997).

12 The ALJ also cited Plaintiff's lack of motivation to work and his failure to continue

13 physical therapy.  (AR 23-24.)  Plaintiff told Dr. Lewis that he is not willing to work in any job

14 position.  (AR 486.)  Further, although he reported that the exercises were increasing his

15 flexibility after just one session, Plaintiff only attended two of the eight physical therapy

16 sessions.  (AR 520-521.)  The ALJ may properly consider a claimant's failure follow a

17 prescribed course of treatment in determining the claimant's credibility.  Orn v. Astrue, 495 F.3d

18 625, 636 (9th Cir. 2007).

19 The ALJ stated that Plaintiff testified that his medication causes him to have difficulty

20 concentrating and focusing and saying what he wants to say.  (AR 23.)  However, Dr. Lewis

21 found that Plaintiff's reports of inability to process information and communicate appear to be

22 inconsistent with her examination.  (AR 23, 489.)  In determining credibility the ALJ may

23 properly consider the observations of treating and examining physicians.  Smolen, 80 F.3d at

24 1284.  Further, Plaintiff verbally coaches his daughter's travel softball team which would

25 contradict his testimony in this regard.  (AR 162.)

26 The Court finds that these are legitimate reasons supported by substantial evidence in the

27 record to support the adverse credibility finding, and declines to address the additional reasons

28 the ALJ offered to find Plaintiff not credible in regards to his limitation testimony.  The ALJ did

1    not err by finding that Plaintiff's testimony regarding his limitations was not credible.

2    **B.      The ALJ Did Not Err in the Weight Given to Dr. Fung's Testimony**

3    Plaintiff alleges that the ALJ failed to articulate a legally sufficient rationale to reject the

4    opinion of his treating physicians.  Defendant argues that the ALJ provided extensive reasons

5    why she rejected the opinion of Dr. Fung stating that it was only the limitations in the medical

6    source statement provided by Dr. Fung that were rejected.

7    The weight to be given to medical opinions depends upon whether the opinion is

8    proffered by a treating, examining, or non-examining professional.  See Lester v. Chater, 81 F.3d

9    821, 830-831 (9th Cir. 1995).  In general a treating physician's opinion is entitled to greater

10   weight than that of a nontreating physician because "he is employed to cure and has a greater

11   opportunity to know and observe the patient as an individual."  Andrews v. Shalala, 53 F.3d

12   1035, 1040-41 (9th Cir. 1995) (citations omitted).  If a treating physician's opinion is

13   contradicted by another doctor, it may be rejected only for "specific and legitimate reasons"

14   supported by substantial evidence in the record.  Ryan v. Commissioner of Social Sec., 528 F.3d

15   1194, 1198 (9th Cir.) (quoting Bayless v. Barnhart, 427 F.3d 1121, 1216 (9th Cir. 2005)).

16   Where the treating physician's opinion is contradicted by the opinion of an examining

17   physician who based the opinion upon independent clinical findings that differ from those of the

18   treating physician, the nontreating source itself may be substance evidence, and the ALJ is to

19   resolve the conflict.  Andrews, 53 F.3d at 1041.  However, if the nontreating physician's opinion

20   is based upon clinical findings considered by the treating physician, the ALJ must give specific

21   and legitimate reasons for rejecting the treating physician's opinion that are based on substantial

22   evidence in the record.  Andrews, 53 F.3d at 1041.

23   The contrary opinion of a non-examining expert is not sufficient by itself to constitute a

24   specific, legitimate reason for rejecting a treating or examining physician's opinion, however, 'it

25   may constitute substantial evidence when it is consistent with other independent evidence in the

26   record.'  Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  The ALJ need not accept a

27   treating physician's opinion that is brief, conclusory, and unsupported by clinical findings.

28   Tonapetyan, 242 F.3d at 1149.

1    In this instance, the reasons the ALJ provided for giving little weight to Dr. Fund's

2  medical source statement were that his opinion is not entirely consistent with the objective

3  medical evidence in the record or the claimant's activity level.  (AR 25.)  The ALJ noted that

4  Plaintiff's MRI showed few degenerative changes and the clamant had a negative straight leg

5  raising test.  (AR 25.)  Additionally, the ALJ cited that Plaintiff was able to garden, fish, and

6  attend sporting activities for his daughter which are inconsistent with the limitations opined by

7  Dr. Fung.  (AR 25.)

8    While Plaintiff argues that the ALJ improperly rejected the opinions of his treating

9  providers, it is only the opinion of Dr. Fung that is raised in Plaintiff's opening brief.

10  Accordingly, the Court finds that Plaintiff has waived the other medical findings and shall only

11  address the rejection of Dr. Fung's opinion.

12    1.    Psoriasis

13    The ALJ noted that although Plaintiff's psoriasis returned when he went off his

14  medication following his hospitalization, it improved when he went back on medication.  (AR

15  21.)  Substantial evidence in the medical record supports the ALJ's finding that Plaintiff's

16  psoriasis improved on his medication.

17    On November 26, 2010, Dr. Lin noted that Plaintiff did not need to start his psoriasis

18  medication as there was no active infection.  (AR 397.)  Plaintiff was seen on December 6, 2010

19  by N.P. Cegielski who noted Plaintiff had psoriasis on his upper extremities, minimal on his

20  lower extremities and was just beginning to get some rough skin on his stomach.  (AR 401.)

21  Plaintiff was not placed on medication, but was to use topicals.  (AR 401.)  By January 2011,

22  Plaintiff's psoriatic skin lesions were back and he was placed on medication.  (AR 437.)

23    Plaintiff had an aggressive looking rash over his whole body in March 2011 and his

24  treatment was changed to treat aggressively with immunosuppresants.  (448, 450, 453, 456.)

25  Plaintiff reported in August 2011 that he was doing well on the medication, although he still had

26  some slightly scaly papules/plaques on his lower legs and complained of back pain.  (AR 571.)

27  Plaintiff told Dr. Fung in October 24, 2011 that the medication helped his psoriasis, but not his

28  back pain.  (AR 553.)  Plaintiff's psoriasis was not as red and scaly and Dr. Fung changed his

1  medication to an injectable.  (AR 553.)  When Plaintiff was seen in December 2011 he claimed

2  the new medication was a "miracle."  (AR 539.)  His psoriasis was much improved with no

3  active lesions.  (AR 539.)  The last medical note in the record states that Plaintiff's psoriasis is

4  still active, mostly on his shins, arms and abdomen, but that Plaintiff reported the medication was

5  still helping.  (AR 527.)

6      Substantial evidence in the record supports the ALJ's finding that Plaintiff's psoriasis

7  was improved when he was on his medication.

8      2.    Objective Medical Evidence

9      The ALJ considered Plaintiff's back pain from his psoriatic arthritis and noted that

10  Plaintiff had an MRI of his lumbar spine on January 28, 2009 that showed narrowing of the disc

11  space at L5-S1 and degenerative changes with no signs of segmental instability.  (AR 21, 289.)

12  A November 5, 2010 MRI showed interval resolution of a previously seen L4-L5 disc protusion,

13  a mild posterior disc bulge, and posterior central annular fissure and typical reactive changes

14  secondary to degenerative disc disease.  (AR 21, 271.)  A March 28, 2011 MRI showed similar

15  results to the November 5, 2010 MRI, and the abnormal enhancement at L4-5 had nearly totally

16  resolved.  (AR 21, 459.)  Dr. Fung's October 24, 2011, treatment notes state that Plaintiff's

17  March 2011 x-ray shows no change from November 2010.  (AR 553.)

18      The MRI results indicate that Plaintiff's back condition had not significantly changed,

19  except that the disc protusion at L4-5 had almost completely resolved.

20      3.    Treatment Notes and Daily Activities

21      In October 2010, Plaintiff reported he was feeling good and was able to swing a bat.  (AR

22  21, 360.)  There was no tenderness in Plaintiff's back.  (AR 360.)  In November 2010, Plaintiff

23  reported no radiation of pain and no leg symptoms; and Dr. Rodriguez noted no weakness,

24  tingling or numbness and mild l/s pain with no masses or erythema.  (AR 21, 375-376.)  On

25  November 26, 2010, Plaintiff reported feeling fine with mild back pain and slight tiredness when

26  he was mowing the lawn.  (AR 396.)

27      At his next visit on March 31, 2011, Plaintiff stated his back was beginning to hurt again

28  since he went off his medication.  (AR 456.)  Dr. Fung found psoriatic arthritis in Plaintiff's

1   SI/back/shoulders.  (AR 456.)  Plaintiff's back exam showed diffuse tenderness, especially in the

2   lumbar spine and SI joints, and he had mild diffuse tenderness in his hands.  (AR 456.)

3   Plaintiff's neck was supple with painful slow movement.  (AR 456.)  Plaintiff saw his mental

4   health doctor on May 13, 2011, and discussed his attendance at his daughter's softball games and

5   he was encouraged to do more walking.  (AR 22, 586.)

6        In July 2011, Plaintiff reported to his mental health provider that he was getting out more.

7   (AR 574.)  He had been fishing on two occasions and was planning a trip to Colorado to attend

8   his nephew's baseball tournament.  (AR 22, 575.)

9        Plaintiff saw Dr. Fung in October 2011, complaining that the medication was not

10  relieving his back pain.  (AR 553.)  Dr. Fung found mild SI tenderness and moderate tenderness

11  in the lower lumbar spine and noted that Plaintiff was moving antalgically when changing

12  positions or walking.  (AR 553.)

13       On December 20, 2011, Plaintiff reported he was doing well on his medication and

14  declared the new medication was a miracle in controlling his psoriasis.  (AR 22, 539.)  His

15  psoriasis and back pain were reduced.  (AR 22, 539.)  Dr. Fung again found mild SI tenderness

16  and moderate tenderness in the lower lumbar spine and noted that Plaintiff was moving stiffly

17  when changing positions or walking.  (AR 539.)

18       Plaintiff saw Dr. Fung again on March 27, 2012 complaining his back was hurting more

19  when he moved around and he would occasionally feel it at night when he tried to turn over.

20  (AR 527.)  Fung noted mild SI joint tenderness and moderate lower lumbar spine and paraspinal

21  tenderness.  (AR 527.)  Dr. Fung found that Plaintiff's psoriatic arthritis was doing okay.  (AR

22  22, 527.)  Dr. Fung stated that Plaintiff's back pain was from "wear and tear" arthritis and

23  fibromyalgia and referred Plaintiff to physical therapy.  (AR 22, 528.)

24       On April 24, 2012, Plaintiff saw his mental health provider and told her that he was going

25  to start a garden.  (AR 524.)

26       At an initial physical therapy appointment on May 7, 2012, Plaintiff was found to have a

27  normal range of motion in his hips, negative straight leg raising test, but some reduced range of

28  motion in his lumbar spine.  (AR 22, 521.)  Plaintiff attended a second session and reported that

1  his back pain had not improved, but he saw increased flexibility from the therapy.  (AR 515.)

2  The record indicates that Plaintiff discontinued physical therapy.

3      On May 15, 2012, Plaintiff told his mental health provider that his garden was doing well

4  and he was enjoying it.  (AR 518.)

5      The ALJ found that the limitations opined by Dr. Fung were not consistent with

6  Plaintiff's ability to garden, fish, and attending sporting activities for his daughter.  (AR 25.)

7      In his September 19, 2012 medical source statement, Dr. Fung opined that Plaintiff could

8  stand and walk one hour each in an eight-hour workday, sit two hours in an eight-hour work day

9  due to his lower back pain, and would need to have a thirty minute break every half hour due to

10  chronic back and hip pain.  (AR 590.)  However, this is inconsistent with Plaintiff's ability to

11  attend his daughter's travel softball games, go fishing, and travel to Colorado.  Similarly, Dr.

12  Fung opined that Plaintiff could never climb, balance, stoop, kneel, or crouch, and could

13  occasionally reach, handle, or finger with both hands.  (AR 590.)  The ALJ noted that is

14  inconsistent with Plaintiff's planting and maintaining a garden.  (AR 23.)  "Although the

15  evidence of [the plaintiff's] daily activities may also admit of an interpretation more favorable to

16  him, the ALJ's interpretation was rational, and [the court] 'must uphold the ALJ's decision

17  where the evidence is susceptible to more than one rational interpretation.' "  Burch, 400 F.3d at

18  680 (quoting Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989)).

19      Although Plaintiff told Dr. Fung that his back hurt more when he moved around and he

20  was occasionally feeling it at night when he tried to turn over at the March 27, 2012 visit, Dr.

21  Fung found that Plaintiff's psoriatic arthritis was doing okay.  While the Court does not take this

22  to be a finding that it had resolved, Dr. Fung found that Plaintiff's back pain was from "wear and

23  tear" and Fibromyalgia.  During the visit Plaintiff indicated that he was receiving relief from his

24  back pain with the medication and during this time period he planted and was maintaining a

25  garden.  There is no indication that Dr. Fung saw Plaintiff between this visit and completing the

26  medical source statement on September 19, 2012 to show that Plaintiff's psoriatic arthritis had

27  returned or his condition had worsened.  Yet, Dr. Fung based his functional limitations on

28  Plaintiff's psoriatic arthritis that was currently requiring therapy with both a biologic agent and

1  an immunosuppressive medication and Plaintiff was still struggling with back pain, shoulder

2  pain, and hand pain that made walking difficult. (AR 591.)

3      The ALJ did consider Plaintiff's psoriasis and psoriatic arthritis in determining his

4  residual functional capacity, but provided "specific and legitimate reasons" supported by

5  substantial evidence in the record to reject the limitations imposed by Dr. Fung.

6                                                **V.**

7                                  **CONCLUSION AND ORDER**

8      Based on the foregoing, the Court finds that the ALJ did not err in finding that Plaintiff's

9  testimony was not credible or in rejecting Dr. Fung's opinion as to Plaintiff's physical

10 limitations. Accordingly,

11     IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the

12 Commissioner of Social Security is DENIED. It is FURTHER ORDERED that judgment be

13 entered in favor of Defendant Commissioner of Social Security and against Plaintiff Felipe

14 Gonzalez Cortes. The Clerk of the Court is directed to CLOSE this action.

15

16 IT IS SO ORDERED.

17 Dated:    **August 13, 2015**

                                          _____
18                                        UNITED STATES MAGISTRATE JUDGE

19

20

21

22

23

24

25

26

27

28